## HAMPTON vs MAYES, ET AL.

## Opinion delivered October 26, 1899.

*1.  Promissory Note—Procedure—Change of Action.*

In a suit originally instituted to recover upon a promissory note, it is not error to allow plaintiff to abandon his right of recovery upon the note and sue upon the original transaction, changing the action from one at law to one in equity, and transferring it to the equity docket; for such procedure is authorized by Mansf. Digest, Sec. 4925 (Ind. Ter. Stat. Sec. 3130).   And such procedure does not cause a dismissal of the action, but merely a change into the proper proceedings and a transfer to the proper docket.

*2.  Exceptions to Master's Report—When Must be Filed.*

Mansf Dig. Sec. 5271 (Ind. Ter. Stat. Sec. 3476) requires exceptions to a master's report to be filed within four days after the filing of the report, if the term so long continues, and if not, before the end of that term; and not "within four days after the first day of the term of court at which the report is made."

*3.  Alteration of Note—Material but Innocent.*

A material alteration in a note, made by the payee, without the maker's knowledge, merely invalidates the note, when made without fraudulent intent, and does not extinguish the original consideration.

*4.  Procedure—Transfer to Equity Docket.*

The transfer of a suit from the law to the equity docket is proper where the action is one based upon a note materially but innocently altered after its execution.

*5.  Vendor's Liens—In Force in Ind. Ter.—Not Waived by Accepting Note.*

The Arkansas statute providing for vendor's liens for purchase-money (Mansf. Dig. Sec. 4398,—Ind. Ter. Stat. Sec. 2865) was extended over and put in force in the Indian Territory; and

(6)

such a lien exists independent of any express agreement between the parties to the contract of sale. Nor does the acceptance by the vendor of a note from the purchaser raise any inference of his intention to waive the lien.

6. *Title to Lands in Chickasaw Nation—Non-Citizen—Minor Citizen.*

  A citizen of the United States, disqualified from holding title to lands in the Chickasaw Nation, cannot defeat a vendor's lien by placing the title to land in such nation, purchased by him, in a minor child, a citizen of said nation.

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

Action by David Mayes and another against Wade Hampton. Judgment for plaintiffs. Defendant appeals. Affirmed.

In August, 1892, the appellees, being in possession of a certain tract of land in the Chickasaw Nation, entered into a contract with the appellant, whereby they were to transfer and deliver to him said land, valued at $2,700, in exchange for certain personal property valued at the same amount. The appellant delivered to the appellees $1,575 worth of the property agreed on, which was accepted at that figure, and under the terms of said contract was to deliver to appellees a stallion at the agreed price of $1,125. The appellant tendered to the appellees, according to contract, the stallion, but appellees refused to accept him, when, on October 1, 1892, the appellant and the appellees made the further contract that, in lieu of the stallion, the appellant should execute to them his promissory note for $1,125, due within one year without interest; and a written memorandum was executed by appellees, and a promissory note was executed by appellant and delivered to appellees. Appellee Williams,

after delivery to him of said note, inserted the words "date" and "ten" in said note. Appellant, after maturity of said note, refused to pay the same on account of said alterations, and the appellees brought this suit on said note on the law docket to recover $1,125. Appellees afterward filed their amended complaint, suing for the balance of the purchase-money for said land, and tendering into court said altered note for cancellation, transferred their cause of action from the law to the equity docket, and prayed a foreclosure for a purchase-money lien on the lands transferred by them. The cause was heard before the master in chancery, whose report is to be found in the transcript. On the 3d day of June, 1898, the cause was heard before Hon. Hosea Townsend, on the exceptions to the master's report. The court sustained the master in his finding that the plea of payment of the appellant could not be sustained; and further found that the alteration was innocently made; that the note was valid; that the appellees had a right to recover the sum of $1,125 and interest; that they had a lien on the lands transferred for said balance of purchase money; and decreed foreclosure of the same,—from which finding of fact and conclusion of law this appeal is taken.

*Albert Rennie* and *Cruce, Cruce & Cruce*, for appellant.

*Furman, Herbert & Hill* and *George Miller*, for appellees.

SPRINGER, C. J. The appellant alleges nine specifications of error in this case. Specifications numbered 1, 2 and 3 are disposed of by reference to the statute.

The first specification is to the effect that the appellees abandoned the original cause of action, and set up another and, as is alleged, a different cause of action. The change in appellees' position by their amended complaint

was this:   The suit was brought originally upon a promissory note.   Ascertaining that this position was not tenable, the note was abandoned, and the appellees sought to recover upon the original transaction.   Section 4925 Mansf. Dig. (section 3130 Ind. T. Ann. St. 1899) is as follows:  "An error of plaintiff as to the kind of proceedings adopted shall not cause an abatement or dismissal of the action, but merely a change into the proper proceedings by an amendment of the pleadings and a transfer of the action to the proper docket." The course pursued by appellees was strictly in accordance with this section of the statute.

*Change of action.*

The second specification of error was to the effect that appellees changed their cause of action from the law to the equity docket.   The section of Mansfield's Digest just quoted permits the transfer of the action to the proper docket, which was done in this case.

The third specification of error, which was to the effect that the exceptions to the master's report were not filed within the time allowed by law, is not well taken.   The transcript of the record shows that the master's report was filed on the 31st day of October, 1896, and that the exceptions to the master's report were filed on the 4th day of November, 1896, which was on the 27th day of the term.   This filing was on the fourth day after the filing of the master's report.   The section of Mansfield's Digest on this subject is as follows:   "All exceptions to the master's report shall be in writing, and shall be made within four days after the first day of the term of the court at which the report is made, if the term so long continues, and, if not, before the end of the term, and shall be disposed of without delay."   Mansf. Dig. § 5271 (Ind. T. Ann. St. 1899, § 3476).   The words, "within four days after the first day of the term of the court at which the report is made," must of necessity refer to the time when the master's report is made; for it would be im-

*Exceptions to master's report.*

*Time of filing.*

possible to file exceptions within four days after the first
day of the term, if the master's report had not been filed at
that time.   So that the proper construction to be placed up-
on this section is, that the exceptions to the master's report
must be made within four days after the filing of the master's
port, if the term so long continues, and, if not, before the end
of the term.

The fourth specification of error by appellant is as
follows:  "In finding that the alteration in the note was not
such a one as would shift the burden on the appellees to
show that it was not fraudulently done, and in requiring the
appellant to take the burden."   Nowhere in the record is
there any ruling of the court to this effect.   It is possible
that the court may have made oral statements at the time to
this effect, but the record preserves nothing except the judg-
ment of the court, which is as follows:   "The court is of the
opinion that said master's.report, in so far as it recommends
that the plea of payment filed herein by defendant be denied,
should be confirmed; but that the exceptions to the master's
report, wherein he recommends that the note excuted by de-
fendant to plaintiffs, described in the complaint, since its
execution was fraudulently altered in a material way, be, and
the same are hereby sustained."   In other words, the court
sustained the master's report in so far as the master held that
the suit was instituted for the collection of $1,125 and por-
tion of the purchase money of certain land; that the note
was given for this purchase money; that the plaintiffs in
their complaint tendered the note in their original answer,
and asked that the same be cancelled; that the plea of pay-
ment by the defendant cannot be sustained; that the note did
not pay the original debt; and that at the institution of the
suit $1,125 of the original purchase money, as agreed upon
by the parties, had not been paid.   This part of the master's
report having been sustained, and no exceptions to it having
been taken by the appellant in the court below, the master's

finding on this point was properly confirmed by the court below, and is affirmed by this court.

This disposes of specification of error numbered 5, which is to the effect that the plea of payment cannot be sustained.

The sixth specification of error is that the court erred in finding that the alteration was innocently made; and the seventh is that the court erred in finding that the note was valid, and that the appellees had a right to recover the sum of $1,125, and $315.09 interest and costs. The record does not support the appellant in his seventh specification of error, namely, that the court found that the note was valid, and that the appellees had a right to recover the principal and interest thereon. The court held, by sustaining the exceptions to the master's report, that the alteration in the note avoided the note, but that the debt for which it was **Alteration of note.** given was not extinguished; but that the alteration, while material, was not fraudulently made, and that the plaintiffs, appellees in this court, immediately abandoned their right of recovery upon the note, which they did by their amended complaint, and surrendered the note for cancellation, and recovered upon the original consideration for which the note was given. The note sued upon in this case in the first instance is as follows: "Purcell, Ind. Ter., Oct. 1st, 1892. Twelve months after date, for value received, I promise to pay, to the order of Mays & Williams, eleven hundred and twenty-five dollars, with interest from —— at the rate of —— per cent. per annum, payable semi-annually at the Purcell National Bank, of Purcell, Ind. Ter. Wade Hampton." It appears from the evidence in the case, and from the master's report, that the payees, appellees in this court, some time after the note had been delivered to them, without the knowledge or consent of the defendant, the appellant in this court, altered said note by filling the first blank with the word

"date," and the second blank with the word "ten," so as to make it read, "with interest from date at the rate of ten per cent. per annum." The master found that this alteration was willful and fraudulently made, and that it not only invalidated the note itself, but extinguished the original debt. To this part of the master's report exceptions were filed, and the exceptions were sustained by the court; the court having held that the alteration was material, and destroyed the validity of the note, but that it was innocently made by the payees, supposing that that was the intention of the parties when the note was executed. The judgment of the court, therefore, is not upon the note, but upon the original consideration; and interest at 6 per cent. per annum was allowed, and not ten per cent., as provided in the note. The authorities all agree that where a note is materially altered after execution, without the knowledge or consent of the maker, and for the purpose of committing a fraud upon the maker of the note, the alteration not only invalidates the note, but extinguishes the original indebtedness. As a matter of fact, in this case the court found that the alteration was innocently made by the payees, and that there was no intention to defraud the maker of the note. This conclusion is not only reasonable, but is consistent with all of the evidence which appears in the record. It is reasonable that the note should draw interest from the date of its execution, and it is reasonable that the legal rate of interest which might be contracted for would be demanded and given. It is evident, from the evidence, that a blank form of promissory note was used, and that it was the custom to fill the blanks so as to express the intention of the parties. It would be unreasonable and unconscionable to hold that the payees of this note should lose their right to recover upon the original debt, merely because they had innocently filled the blanks so that the note expressed what they understood to be the intention of the praties. If alterations of this kind are innocently made, they do

not constitute forgeries or frauds upon the makers of the instruments; but, if such alterations are material, they will avoid the instruments, but, will not deprive the payees of the right of bringing and sustaining an action on the original consideration. The appellees in their brief cite numerous authorities to sustain this proposition, but the case of Lewis vs Schenck, 18 N. J. Eq. 459–461, is exactly in point. The syllabus of that case is as follows: "(1) A material alteration of a note by the payee without fraudulent intent, though it avoids the note, does not deprive him of his right to recover the original debt. (2) And, in such case, the action for the recovery for the debt should be brought at law; but the alteration being made under misapprehension, and the discovery prayed in the bill being in some degree necessary to show the agreement and the mistake, jurisdiction of this case is sustained." In that case the action was brought at law, and was transferred to the equity docket. In that case the court held further in its opinion as follows: "The only doubt in the case arises upon the jurisdiction of this court. The complainant might have recovered his debt at law, upon the view taken of the matter. But the act of Vanderbeck, which avoided the instrumnent, was done under misapprehension; and the courts of equity have jurisdiction in all cases of mistake, and the discovery prayed by the bill was in some degree necessary to show the agreement and the mistake, and therefore the jurisdiction of this court may be sustained." This court holds that the transfer of the case at bar from the law to the equity docket was proper, for the reasons stated in the New Jersey case, above referred to, and the court adopts the views adopted by the New Jersey supreme court, and holds that when a promissory note is innocently, and without the intention of committing a fraud upon the maker, altered in a material manner, the alteration invalidates the note, but does not extinguish the original debt.

The eighth specification of error is as follows: "In

holding that the appellees had an equitable lien upon the land described in the petition, and in enforcing said lien, and in directing a sale of the premises to satisfy the judgment of $1,404.09." The appellant contends that nowhere in these transactions is it contended that a lien for purchase money was reserved by the contract. Such a reservation is not necessary. A vendor's lien in this jurisdiction is secured by the statute. See chapter 96, Mansf. Dig. (chapter 44, Ind. Ter. Ann. St. 1899), entitled "Liens." It does not, therefore, arise out of an agreement of the parties, but is wholly independent of any agreement. The doctrine of vendor's lien for purchase money prevails in Arkansas, and was extended over and put in force in the Indian Territory. See Shall vs Biscoe, 18 Ark. 142; Campbell vs Rankin, 28 Ark. 401; Turner vs Horner, 29 Ark. 440; Lavender vs Abbott, 30 Ark. 172; Stephens vs Shannon, 43 Ark. 464; Chapman vs Liggett, 41 Ark. 292.

Vendor's lien.

The ninth specification of error of appellant is based upon the overruling of appellant's motion for new trial. The preceding allegation of error not having been well taken, the court did not err in overruling the motion for a new trial.

It is possible that reference should be made to the transfer of the title to the land in question to a minor child, six years old, who was a citizen of the Chickasaw Nation. The appellant in this case was a citizen of the United States, and could not hold improvements in the Chickasaw Nation. While furnishing the purchase money himself, he caused the title to be put in this child. The court very properly held that the placing of the title in this minor child did not destroy the vendor's lien, and regarded the defendant below, the appellant in this court, as the real purchaser of the premises, and that the acceptance of his note raises no inference of his intention to waive the lien. See 2 Jones, Liens,

§ 1074. Hence the appellant's contention that the conveyance to this infant child avoided the vendor's lien is untenable. We see no error in the record in this case. The judgment of the court below is therefore affirmed.

CLAYTON and THOMAS, JJ., concur.